WILSON v. WILSON.

1. The Probate Court has no power to render judgment on the unpaid note of a creditor of the intestate. An order of that court, directing the payment of such a claim, made in a proceeding instituted by the distributees against the administrator and his sureties for the settlement of the personal estate (no creditor being a party before the court) is not an adjudication, nor did it arrest the currency of the statute of limitations and the presumption of payment as to such claims.

2. A decree by the Probate Court in favor of a creditor, rendered in a cause to which an absent administrator was named as a party but never served, is not binding on the estate of the intestate.

Before NORTON, J., Spartanburg, October, 1887.

This was an action by Stanyarne Wilson, as administrator *de bonis non* of Bennett Wilson, against R. Z. Wilson and others. The opinion states the case.

*Messrs. Bomar & Simpson,* for appellant.

*Messrs. J. S. R. Thomson* and *A. B. Calvert,* contra.

September 26, 1888. The opinion of the court was delivered by Mr. Justice McGowan. In 1863, Bennett Wilson died intestate, and it seems that administration was granted to two

administrators (names not given), leaving unpaid at least two debts to one Jeremiah Glenn, viz., one sealed note for $106, and bearing date February 21, 1855; and the other a promissory note for $84, bearing date December 13, 1855, with a credit of $5, on September 29, 1858.

In September, 1867, J. D. Pearson and his wife, Ellender (who was a daughter of the intestate, Bennett Wilson), filed their petition in the then Court of Ordinary for partition of a tract of land of the intestate, which was sold by an order of the Court of Ordinary, now Probate Court, for $370, which is still in the custody of the said court.

In March, 1873, the said Pearson and wife filed another petition in the Probate Court, as stated, against Washington Johnson, administrator (so styled), for a settlement of the personal estate of Bennett Wilson. The sureties on the administration bond were made parties by regular service of process, but there was no evidence that Washington Johnson, named as defendant and styled "surviving administrator," was ever brought into court by service, publication, or otherwise. On the contrary, the petition itself stated that "he had removed beyond the limits of the State." Neither were the creditors made parties, nor called in to prove their demands, nor enjoined from suing them at law. There was one or more continuances, and finally, on May 21, 1874, Benjamin Wofford, Esq., probate judge of Spartanburg, decreed as follows: "Partial settlement of estate of Bennett Wilson, deceased, Washington Johnson, administrator, made May 21, 1874, the sureties of the administrator being also made parties. (Statement omitted.) It is · ordered and decreed, that Washington Johnson, administrator of Bennett Wilson, pay the costs, &c., &c., also upon the notes due to Jeremiah Glenn, $264.20, and upon the sealed note due to O. P. Wood, the sum of $4.15, being 59¾ cents on the dollar on the amount due on said notes," &c. (See Brief.)

It seems that nothing more was done until 1885, when the plaintiff, having become administrator de bonis non of the estate of Wilson, filed this petition in the Probate Court, to have the aforesaid fund in its custody turned over to him for the payment of the aforesaid debts of the intestate. The heirs at law, the

defendants, resist the claim, insisting that the debts had all been paid by the presumption arising from lapse of time, were barred by the statute of limitations and by great *laches*, and that the fund should be distributed among them under the statute of distributions. The judge of probate decreed that the fund should be distributed among the heirs at law, after paying the costs and a reasonable fee for defendants' attorneys. Upon appeal to the Circuit Court, Judge Norton affirmed the judgment below and dismissed the appeal. From this decree the appeal comes to this court upon the following grounds:

"I. In holding that in the proceeding begun in 18—, to settle the estate of Bennett Wilson, the administrator of said estate was not properly made a party.

"II. In holding that neither the administrator nor the estate nor the heirs of the intestate were bound by the decree of the ordinary on said settlement.

"III. In not finding, whether the said estate and the heirs at law were bound by said decree as an estoppel or not, that such decree settled the question, that at that time the sealed note of Jeremiah Glenn was a valid subsisting demand against the said estate, and said estate was then and would continue to be for twenty years from the date of such decree, under a legal and binding obligation to pay said note.

"IV. In finding that the note of Jeremiah Glenn should not be paid from the fund in court, because the owner of said note had been guilty of *laches*.

"V. In holding that the heirs of Bennett Wilson stand in the same position, and have the same right to contest this proceeding, as if the land of said estate had never been sold, but had been over twenty years ago divided among them in kind, and that they had been in uninterrupted possession of it ever since.

"VI. In not holding that the money arising from the sale of the land was now in court, and had never at any time been in possession of the heirs of the said intestate, and had not been in court for any such length of time as was stated in the decree.

"VII. In not finding that under the law, the proceeds of real estate now in court could not be paid out until the debts of the intestate were paid, and in not finding that the debt of Jeremiah

Glenn was a good and valid debt against said estate, and was not paid by lapse of time; and in not sustaining the application of this appellant, the administrator of said estate, for so much of the proceeds of sale of said real estate as was necessary to pay this and the other debts of said estate.

"VIII. In not finding that the Probate Court had no jurisdiction to make a decree herein, distributing the fund in his hands among the heirs of Bennett Wilson—such order being an order in the partition of real estate.

"IX. In not at least holding that the administrator (appellant herein) having in good faith, in the discharge of his duty, filed this proceeding for the purpose of paying the debts of his intestate, he should be entitled to have his costs and proper fees and expenses paid out of the fund in court, and in not ordering the same paid therefrom."

The sealed note of Jeremiah Glenn, for which the proceedings seek payment, at the time of the death of the intestate had been due five years; at the time the land was sold for partition, twelve years; when the alleged settlement was had in the probate office, eighteen years; and when this application was made for payment, thirty years. The Circuit Judge said: "The alleged debts consist of a promissory and a sealed note, and it was admitted in the argument that the former was barred by the statute of limitations, and the latter presumed to be paid by the lapse of time, unless certain proceedings in the Probate Court, had in 1882 (1873?) for the settlement of the estate, removed such bar and presumption. These proceedings consist in a petition by one of the heirs against the absent administrator, residing then, as it was said, in Georgia, and his resident sureties, for a settlement of the personal estate. In the opinion of the court, the administrator was not properly a party to that proceeding, and neither the estate of his intestate nor himself personally could be bound by a decree made thereunder. Such decree, moreover, could not bind the heirs of the intestate, for it does not purport to do so, and was not in the purview of the petition. It lacks every element of privity and mutuality required in a decree that is intended to be an estoppel and to bind parties, whose property it is proposed to dispose of," &c.

We agree that the order of the probate judge in 1874 was not equivalent to a "judgment" in favor of the creditor, for the additional reason that the proceeding was not in any sense a creditors' bill to marshal assets. It was not filed either by the surviving administrator or a creditor, but by a distributee for the settlement of the personal estate. The Court of Probate has no power to render judgment on the unpaid note of a creditor of the intestate ; and therefore the so-called decree of the probate judge cannot be regarded as having the dignity of an adjudication. The only question which can arise in connection with the probate proceedings is, whether they can be regarded as such an acknowledgment of the sealed note as to give new life and a new starting point to the period of time which raises a presumption of payment.

In this point of view we think this a stronger case as to the bar of the presumption, than that of *McKinley* v. *Gaddy* (26 S. C., 573), and must be controlled by it. In that case it was held that "where creditors present their claims before the master under the call of the court, the heirs may plead the statute of limitations and the presumption of payment as a bar to the claims so presented." In delivering the opinion of the court, Mr. Associate Justice McIver said what is precisely applicable to this case : "There certainly was nothing in any of these proceedings that would even tend to rebut the presumption arising from lapse of time. The creditors were never made parties, and therefore could not be concerned in, or be in any wise bound by, anything that occurred therein. There was nothing whatever to prevent them from enforcing their claims by suit against the administrator. There was no order enjoining them from doing so, and no case pending in which such an order could properly have been obtained ; for surely the creditors, or some of them, as representatives of their class, were necessary parties to any proceeding by which it might be sought to restrain them from pursuing their rights in the ordinary form," &c. We cannot distinguish the two cases.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.